## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>BALLANTRAE HEALTHCARE, LLC, *et al.*,<br><br>Debtors.<br><br>----------------------------------------------------------<br><br>ZEV KARKOMI, CRAIG BERNFIELD and KB/BALLANTRAE, LLC<br><br>Plaintiffs<br><br>v.<br><br>BALLANTRAE HEALTHCARE, LLC, *et al.* and the OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Defendants. | Chapter 11<br><br>Case No. 03-33152-HDH-11<br><br>Jointly Administered |

## PLAINTIFFS' COMPLAINT FOR DECLARATORY AND OTHER RELIEF

The plaintiffs in this adversary proceeding (the "Plaintiffs"), Zev Karkomi, Craig Bernfield, and KB/Ballantrae, LLC ("KBB"), by their attorneys, allege the following as and for their Complaint for Declaratory Relief:

## THE PARTIES

1.     Plaintiff Zev Karkomi is an individual residing in Illinois.

2.     Plaintiff Craig Bernfield is an individual residing in Illinois.

3.     Plaintiff KBB is a Delaware limited liability company.

4.     Defendant Ballantrae Healthcare, LLC ("Ballantrae") and its affiliated debtors listed on Exhibit "A" hereto (collectively, the "Debtors" or "Defendants") are the debtors and debtors-in-possession in the above-captioned bankruptcy cases. The Debtors are amenable to service of process pursuant to Rule

CH\669755.5        CH\669755.6

7004(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by mailing a copy of the Summons and Complaint to their attorney of record: George H. Tarpley, NELIGAN TARPLEY ANDREWS & FOLEY LLP, 1700 Pacific Avenue, #2600, Dallas, Texas 75201.

5.      Defendant the Official Committee of Unsecured Creditors (the "Committee" or the "Defendant") is the official committee appointed in the Debtors' bankruptcy cases pursuant to section 1102 of title 11 of the United States Code (the "Bankruptcy Code"). The Committee is amenable to service of process pursuant to Bankruptcy Rule 7004(b), by mailing a copy of the Summons and Complaint to its attorney of record: Kenneth Stohner, Jr., JACKSON WALKER, LLP, 901 Main Street, #6000, Dallas, Texas 75202.

## JURISDICTION AND VENUE

6.      On March 28 and April 10, 2003 (the "Petition Date"), the Debtors filed voluntary petitions for relief under the Bankruptcy Code. The Debtors are continuing in possession of their property, but are no longer operating and managing their businesses. They remain debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. A motion to convert their cases to proceedings under chapter 7 of the Bankruptcy Code is pending.

7.      Plaintiffs have filed proofs of claim (the "Proofs of Claim") in the Debtors' bankruptcy cases.

8.      This adversary proceeding is brought pursuant to Bankruptcy Rules 7001(2), (7) and (9). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper pursuant to 28 U.S.C. § 1409(a).

9.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).

## FACTUAL BACKGROUND

10.      Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 9 as set forth herein.

CH\669755.5          CH\669755.6                                    2

11.     Due to changes in medicare reimbursement policies and a number of additional well publicized problems, the nursing home industry has experienced severe financial and operational difficulties for almost five years, and is deemed by many to be "in crisis." These difficulties have led to numerous chapter 11 filings by operators of nursing homes.

12.     In March 1999, a number of real estate partnerships and limited liability companies in which Zev Karkomi (and in many cases his partner, Craig Bernfield) held varying interests (the "Sensitive Care Landlords") leased eight nursing homes to nursing home operator Sensitive Care. Due to industry and operating problems, Sensitive Care went out of business. Shutting down the nursing homes they leased to Sensitive Care would have had a devastating, and in some cases perhaps deadly, affect upon the residents of the nursing home properties, and would have substantially reduced the value of the Sensitive Care Landlords' properties.

13.     In an attempt to avoid this humanitarian and economic disaster, Karan Texas Nursing Home, LLC ("Karan") was created by a partnership in which Zev Karkomi held an interest to operate the nursing homes. Karan funded over $4 million in losses between March 1999 and September 1999.

14.     At all times, the Sensitive Care Landlords have acted as owner landlords and not as operators of nursing homes. During the period from September 1999 through December 1999, two of the nursing homes were closed by the State of Texas and the Sensitive Care Landlords were able to find new operators to lease and operate the remaining six nursing homes.

15.     In September 1999, Ballantrae Healthcare Investors ("BHCI"), led by Murry Gunty, formed Ballantrae for the purpose of operating nursing homes throughout the United States. Ballantrae entered into leases for and agreed to operate five of the six Sensitive Care nursing homes.

16.     From Fall 1999 through Spring 2000, Ballantrae leased nine additional nursing homes from landlords other than the Sensitive Care Landlords,

CH\669755.5       CH\669755.6                        3

including six in which Zev Karkomi (and in some cases his partner, Craig Bernfield) held varying interests. Despite these acquisitions, Ballantrae did not operate enough nursing homes to cover its overhead costs. By June 2000, Ballantrae was experiencing liquidity problems.

17.    During the same Fall 1999 through Spring 2000 period, Sun Healthcare, a large public company nursing home operator, was also experiencing financial difficulties and had filed a chapter 11 case. A number of additional real estate partnerships and limited liability companies in which Zev Karkomi (and in many cases his partner, Craig Bernfield) held varying interests (the "Sun Healthcare Landlords") leased numerous nursing homes to Sun Healthcare.

18.    Sun Healthcare threatened to reject the leases of 15 nursing homes and other facilities leased to it by the Sun Healthcare Landlords. Ballantrae requested that rather than leasing these nursing homes to third parties after rejection or termination by Sun Healthcare, the Sun Healthcare Landlords lease these nursing homes to Ballantrae to help Ballantrae achieve economies of scale.

19.    An agreement was reached among the Sun Healthcare Landlords, BHCI, Ballantrae, KBB, and others. This agreement was intended to (a) provide additional capital to Ballantrae and (b) enable Ballantrae to double in size and thereby spread its overhead cost to more nursing homes and operate profitably.

20.    Pursuant to this agreement, KBB invested $3,954,575 in Ballantrae on June 1, 2000, and another $1,045,425 in Ballantrae on October 1, 2000,[1] and Ballantrae leased the 15 Sun Healthcare nursing homes and other facilities from the Sun Healthcare Landlords. Shortly thereafter, Ballantrae and the other Debtors entered into a $5,000,000 secured loan facility with LaSalle Bank National Association ("LaSalle") secured by the Debtors' accounts receivable.

---

[1]    The investments and loans made by KBB to the Debtors were made on the terms, and with the collateral, as more fully set forth in its proof of claim. KBB's proof of claim was previously filed in the Debtors' bankruptcy cases. Because the proof of claim is voluminous, Plaintiffs do not attach it hereto. A copy may be obtained upon request.

21.     The increase in the number of nursing homes operated and the substantial equity investment in June 2000 did not enable Ballantrae to achieve profitability. Ballantrae lost approximately $11,000,000 in 2000.

22.     By April 2001, Ballantrae was experiencing further liquidity problems. KBB provided Ballantrae a $3,000,000 loan, BHCI provided Ballantrae a $1,045,425 loan, and LaSalle increased its secured loan to $10,000,000. The LaSalle loan was guaranteed by Zev Karkomi and Craig Bernfield. Ballantrae also commenced divesting unprofitable nursing homes.

23.     Despite the additional funding and divestitures, Ballantrae's financial difficulties continued. Ballantrae lost approximately $6,000,000 in 2001 and $3,000,000 in 2002.

24.     The catalyst for the initial filing of the Debtors' bankruptcy proceedings on March 28 was that the Debtors were out of cash and had to meet a $1.6 million payroll on that date. The Debtors were able to obtain a commitment to borrow from KB Funding, LLC (the "DIP Lender"), an entity controlled by Zev Karkomi and Craig Bernfield, the amounts necessary to make the payroll through a debtor-in-possession financing arrangement and the Debtors thus received funds to cover the payroll.

25.     On May 30, 2003, the Court signed an order (the "DIP Order"), approving the Debtors' DIP financing and cash collateral arrangements with the DIP Lender and LaSalle, respectively, on a final basis. The DIP Order also provided the Committee with the authority to assert, on behalf of the Debtors, (i) any claims, causes of action, and defenses released by the Debtors in the DIP Order, or (ii) claims, causes of action contesting the validity, extent, priority, perfection, avoidability or enforceability of the security interests asserted by the Plaintiffs in the Debtors' cases.

26.     The Committee was appointed on April 23, 2003, and, upon the approval of the DIP Order, claimed to have promptly initiated an investigation of possible claims, causes of action, and remedies the Debtors might possess against, among others,

the Plaintiffs in this Complaint. The Committee has indicated to the Plaintiffs that they believe they, or the Debtors estates have, and they intend to commence, actions against the Plaintiffs and perhaps others based on the following claims and similar claims (the "Claims"):

        a.      <u>Marshaling/Equitable Subordination</u>: a claim for marshaling against LaSalle, in order to require LaSalle to satisfy its claim against the Debtors by proceeding against the Plaintiffs, as guarantors, and the collateral Plaintiffs pledged to LaSalle, before proceeding against the Debtors' account receivable. This claim is coupled with a claim that Plaintiffs should not be entitled to enforce their subrogation rights to the secured creditor position of LaSalle, and if subrogation is allowed, such subrogation claim should be recharacterized as equity and/or should be equitably subordinated, pursuant to section 510(c) of the Bankruptcy Code, to the claims of other creditors of the Debtors. Essentially, the Committee alleges that the LaSalle loan was a "disguised equity contribution" to the Debtors and should therefore be subordinated to the claims of the Debtors' unsecured creditors.

        b.      <u>Substantive Consolidation/Alter Ego</u>: a claim for substantive consolidation, pursuant to section 105(a) of the Bankruptcy Code, seeking to substantively consolidate the real property owned by the Plaintiffs and others into the Debtors' estates. Similarly, the Committee intends to assert claims of alter ego, single business enterprise, joint venture and "zone of insolvency" to establish liability against the Plaintiffs for unpaid creditor and other claims. At the heart of these claims is an allegation that the Plaintiffs and the Debtors are really one and the same (i.e., that the Plaintiffs are the "alter ego" of the Debtors).

        27.      The Committee's Claims are not supported in fact or by applicable law.

<u>COUNT I</u>
<u>CLAIM FOR DECLARATORY RELIEF</u>

28.     Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 27 as set forth herein.

29.     Plaintiffs' claims are based upon a justiciable case or controversy within the meaning of Article III of the Constitution of the United States. Plaintiffs seek to have the rights of the parties declared and the substantial controversy between the parties resolved through this Court's entry of a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and in accordance with Rule 57 of the Federal Rules of Civil Procedure. Pursuant to those statutes, this Court may declare the rights or legal relations of any party in any case involving an actual controversy.

30.     An actual controversy has arisen and now exists between the Plaintiffs and Defendants, in that the Committee has indicated its intent to assert the Claims described above against Plaintiffs.

31.     This Court is the proper forum for determining the Claims because (1) adjudication of the Committee's Claims will substantially affect the Debtors' estates and their creditors, (2) many of the Committee's Claims are uniquely bankruptcy causes of action (i.e., equitable subordination, pursuant to 11 U.S.C. § 510(c), and substantive consolidation, pursuant to 11 U.S.C. § 105(a)).

32.     Plaintiffs seek a declaratory judgment, declaring the matters set forth in paragraphs 33 through 37 below:

33.     The Claims, if any, are property of the Debtors' estates.

34.     Any action or inaction pertaining in any way to the ownership or operation of the nursing home facilities, including, without limitation, the provision of care or the contracting for goods and services, was the responsibility of the Debtors and not the Plaintiffs or their affiliates, and therefore, the Committee cannot avail itself of any of its Claims, or any similar claims, against Plaintiffs or their affiliates.



35.     The leases between any of the Debtor-entities and the Plaintiffs or entities in which they are involved (including, without limitation, Karan Associates, Commerce Nursing Homes, L.L.C., Manor Associates, Liberty Associates Limited Partnership, October Associates, Wheeler Healthcare Associates, L.L.C., Kansas City Nursing Home Associates, L.L.C., Hobbs, L.L.C., Xion, L.L.C., Elite Lagrange, L.L.C., Elite Mattoon, L.L.C., Elite Yorkville, L.L.C., and Salem Associates, Ltd.) are true leases and are not void, voidable, or subject to recharacterization as relationships other than true leases between landlords and the Debtors' estates as tenants.

36.     Neither Plaintiffs nor their affiliates engaged in any conduct which could render them liable for any claims against the Debtors.

37.     Plaintiffs are not liable for any economic loss or injury suffered by any person doing business with any or all of the Debtors.

## COUNT II
## CLAIM FOR DECLARATORY RELIEF (RECOUPMENT)

38.     Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 37 as set forth herein.

39.     In the alternative, if it is determined that Plaintiffs or their affiliates are liable to the Debtors' estates on any of the Committee's Claims, Plaintiffs and their affiliates are entitled to recoup their claims against the Debtors against Plaintiffs' liability on any of the Committee's Claims.

## COUNT III
## CLAIM FOR DECLARATORY RELIEF (SETOFF)

40.     Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 39 as set forth herein.

41.     In the alternative, if it is determined that Plaintiffs or their affiliates are liable to the Debtors' estates on any of the Committee's Claims, Plaintiffs and their affiliates are entitled to setoff their claims against the Debtors against Plaintiffs' liability on any of the Committee's Claims.

## COUNT IV
## ADJUDICATION OF VALIDITY, EXTENT, AND PRIORITY OF CLAIMS

42.     Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 41 as set forth herein.

43.     Plaintiffs previously filed proofs of claim (the "Proofs of Claim") in the Debtors' bankruptcy cases and such Proofs of Claim are incorporated herein by reference. Because the Proofs of Claim are voluminous, Plaintiffs do not attach them hereto. Copies may be obtained upon request. The Proofs of Claim set forth Plaintiffs' claims against the Debtors' estates and are based on Plaintiffs' loans, investments, rights of subrogation, guaranties, and letters of credit.

44.     Plaintiffs seek adjudication of the validity, extent, and priority of the claims set forth in the Proofs of Claim in conjunction with the declaratory relief requested above, as such claims arise out of, and are directly related to, the same subject matter.

**WHEREFORE**, Plaintiffs respectfully request, following dispositive motion or trial, entry of judgment in Plaintiffs' favor, ruling as follows:

(1)     that all of the Committee's Claims, or any similar claims, against Plaintiffs and their affiliates have no merit and Plaintiffs and their affiliates have no liability thereon;

(2)     in the alternative, if it is determined that Plaintiffs or their affiliates are liable to the Debtors' estates on any of the Committee's Claims, Plaintiffs and their affiliates are entitled to recoup or setoff their claims against the Debtors against Plaintiffs' liability on any of the Committee's Claims;

(3)     the leases between any of the Debtor-entities and the Plaintiffs or entities in which they are involved (including, without limitation, Karan Associates, Commerce Nursing Homes, L.L.C., Manor Associates, Liberty Associates Limited Partnership, October Associates, Wheeler Healthcare Associates, L.L.C., Kansas City Nursing Home Associates, L.L.C., Hobbs, L.L.C., Xion, L.L.C., Elite Lagrange, L.L.C., Elite Mattoon, L.L.C., Elite Yorkville, L.L.C., and Salem Associates, Ltd.) are true leases and are not void, voidable, or subject to recharacterization as relationships other than true leases between landlords and the Debtors' estates or as tenants;

(4)     Plaintiffs' Proofs of Claim, and the rights, claims, and interests set forth therein, are allowed in full, to the extent and priority set forth therein; and

(5)     the Plaintiffs have such other and further relief as the Court deems just and appropriate.

Dated:     March 3, 2004
           Dallas, Texas

By: 

Mark Stromberg, SBN 19408830
R. Trent Watkins, SBN 24037676
Stromberg & Associates, P.C.
Two Lincoln Centre
5420 LBJ Freeway, Suite 300
Dallas, TX 75240
(972) 458-5353
(972) 770-2156 (Facsimile)

and

David S. Heller
Shira Roth
Latham & Watkins LLP
233 S. Wacker Drive, Suite 5800
Chicago, Illinois 60606
(312) 876-7700
(312) 993-9767 (Facsimile)

Attorneys for Zev Karkomi, Craig Bernfield, and KB/Ballantrae, LLC

# EXHIBIT "A"

## Debtors

1.  Ballantrae Healthcare, LLC
2.  Ballantrae Texas, LLC
3.  BTHC I, LLC
4.  BTHC II, LLC
5.  BTHC III, LLC
6.  BTHC IV, LLC
7.  BTHC V, LLC
8.  BTHC VI, LLC
9.  BTHC VII, LLC
10. BTHC VIII, LLC
11. BTHC IX, LLC
12. BTHC X, LLC
13. BTHC XI, LLC
14. BTHC XII, LLC
15. BTHC XIV, LLC
16. BTHC XV, LLC
17. BTHC XVI, LLC
18. BTHC XVII, LLC
19. BTHC XVIII, LLC
20. BTHC XIX, LLC
21. BTHC XX, LLC
22. Ballantrae Illinois, LLC
23. BILHC I, LLC
24. BILHC II, LLC
25. BILHC III, LLC
26. BILHC IV, LLC
27. BILHC V, LLC
28. Ballantrae Arizona, LLC
29. BAZHC I, LLC
30. BAZHC II, LLC
31. BAZHC III, LLC
32. BAZHC IV, LLC
33. Ballantrae Oklahoma, LLC
34. BOHC I, LLC
35. BOHC II, LLC
36. Ballantrae Missouri, LLC
37. BMOHC I, LLC
38. BMOHC II, LLC
39. Ballantrae Ohio, LLC
40. BOHHC I, LLC
41. BOHHC II, LLC
42. Ballantrae New Mexico, LLC
43. BNMHC I, LLC